Madam Clerk, would you please call the case for argument? 22-1824, Eastern Arkansas, United States v. Jessica Mathes Alright, Ms. Talley, we'll hear from you first. Good morning. May it please the court, my name is Sylvia Talley and I represent the appellate Jessica Mathes. Ms. Mathes was charged with and pled guilty to possession of meth with intent to distribute. The evidence obtained in this case stemmed from a traffic stop by West Memphis Police Detective Jamie Counts. The traffic stop was a truck in which Ms. Mathes was the passenger in. Now, the truck was also occupied by two other people, Clinton Hughes, who owned the truck and was operating it at the time of the traffic stop. Also, Justin Ashburn was sitting in the backseat of the truck. Now, during this traffic stop, Detective Counts, he searched the truck and he found a scale in the closed center console. Now, the scale, it was in its original packaging and it was in a plastic container in a closed box. And because Detective Counts had a feeling that the scale was drug paraphernalia, he arrested Ms. Mathes and Mr. Hughes. Now, prior to searching the truck, he had already searched Mr. Ashburn and found meth on his purse. So, Mr. Ashburn had been arrested prior to the search of the truck. Now, in following Ms. Mathes' arrest, she was searched and meth was also found on her person and she also made some incriminating statements after her arrest. And the meth seized from her person and her statements, they formed the basis of her charge and conviction. The main issue before this court is whether there was probable cause to arrest Ms. Mathes based on Detective Counts' discovery of the scale that he assumed was drug paraphernalia. While the district court concluded that there was probable cause to believe that Ms. Mathes owned the scale or possessed the scale, the district court's factual findings do not support such a conclusion. It's obvious that the district court credited Detective Counts' statement that Mr. Hughes had told him that Ms. Mathes had driven his truck earlier. But at the time of the traffic stop, it's without question that Mr. Hughes, he owned the truck and he had exclusive dominion and control over the truck. Also, even though the scale, it was found in close proximity to Ms. Mathes in the close center console, there was nothing presented that Ms. Mathes had ever accessed the center console or that she had permission to access the center console. More importantly, there is nothing to suggest that she even knew that the scale was in the console or that it was drug paraphernalia. Again, the scale was in his original packaging and a plastic container and a closed box in the closed center console. So based on the facts known to Detective Counts at the time of her arrest, he could not have reasonably believed that Ms. Mathes knew that the scale was in the center console or that it was drug paraphernalia. So, I mean, so that's our main claim that Ms. Mathes had no knowledge, that there was no evidence presented that Ms. Mathes had knowledge that the scale was in the center console. And even if she had knowledge that the scale was in the center console, there's nothing to show that she knew that it was drug paraphernalia. It was in his original packaging. There was no evidence presented that she had any knowledge of the scale, basically. When you say it was in its original packaging, you don't mean, do you, that it was factory sealed and had never been opened? That's correct, Your Honor. I do not mean that. I just mean that it was in its original packaging. But when it was removed from that packaging, there was white powder on the scale, as I understand it. Is that undisputed or is that a finding that you're not challenging? That is correct. We're not challenging the finding that, well, the district court found it credible that, and also the exhibits, they show that it was a white residue on the scale. It wasn't much, I don't believe, but that was it about the scale. So when you say the original packaging, what you mean is that apparently whoever used it had put it back into the original box and placed it in the console. That is correct, Your Honor. But you don't think there's probable cause to believe that whoever had been driving that vehicle or was in the front passenger seat or both knew what was in the console? That is correct, Your Honor. Why not? Why not? I mean, we're not talking proof beyond a reasonable doubt here. We're just talking probable cause. Why isn't it a reasonable inference that a person who'd been driving and front seat passenger-ing that car would know what's in the console? Because there was no evidence presented that she ever looked in the center console or had permission to look in the center console. Mr. Hughes was driving that car. He had access to all the areas in that car. The passengers usually don't have access to all the areas in a person's car. Even if she had been driving the car earlier in the day, we don't know how long that's, well, there was no evidence presented how long that scale had been in that car. Well, do you think it was reasonable for an officer to infer that if she'd been driving it just before the current driver that the scale had also been in there at that time? If she had been driving the car, during her time that she was driving the car, are you saying that during her time that she was driving the car, the officer could infer that she knew that the scale was in the center console? Was that your question, Your Honor? Well, you said that there's no evidence how long the scale had been in there. I'm just asking whether a reasonable officer could have inferred that the scale had been in there throughout the day, including during the time that she was driving. That is correct. He could infer that, but still, there is nothing to infer that she knew that the scale was in the center console. And based on those... Yeah, go ahead. If you have anything further to argue, that's all I wanted to raise with you right now. Ms. Townley, I did have a question regarding the argument that the inquiry about Ms. Mathis' prior arrests prolonged the traffic stop. Could you explain how, if that's your argument, how did it prolong the traffic stop? It's our argument that when Detective Counts, he conducted the traffic stop because the truck allegedly veered off the side of the road and the license plate was damaged, I believe. But I think when he said he could, when he got up on the license plate, he could read the license plate, and he questioned the driver about, well, he told the driver why he had pulled him over. And the driver explained why he veered off the side of the road. Hey, I was eating. And there was food in the truck to attest that, yes, he might have been eating. That was a reasonable explanation for veering off the side of the truck. So when Detective Counts asked about the criminal histories of the occupants, I mean, he testified to himself that once he learned that, hey, these people had prior criminal histories, I had reason, I suspected that they were involved in some criminal activity. So I think by him asking that question, asking about their prior criminal histories and them disclosing the fact that, hey, we've been, two of them disclosing the fact that, hey, I've been arrested, where were you arrested for? They said drugs. And I mean, this interest that, hey, these people might be doing something illegal. So that's our basis that him asking those criminal-related questions, it transformed from the routine traffic stop into a criminal investigation at that point. But how did it, why was it impermissible to ask those questions? How did that violate the Fourth Amendment? It's our position that asking questions specifically about an occupant's criminal history, I don't think Rodriguez went into that, said that was permissible, that officers can ask questions about an occupant's criminal history. Because I think that goes into investigating criminal conduct rather than the traffic stop. Okay, if there is any more questions regarding the prolongation of the traffic stop, I would like to go back into the, whether that was reason, whether that was probable cause to arrest her based on the, well, Detective Counsel's assumption that the scale was drug paraphernalia. As I mentioned in the brief, that all we have here is Ms. Mathis' mere presence where alleged contraband was found and her mere association with those who might have been involved in criminal activity. As this court has said time and again, that is not enough for probable cause to arrest. So that is why we are asking the court to reverse the district court's order denying Ms. Mathis' motion to suppress and vacate her conviction. If there aren't any more questions, I would like to reserve the remainder of my time for rebuttal, please. I had one other question on this topic of the questioning. The district court said during the time required to hear back from dispatch, the detective learned that Mathis and Ashburn had been previously arrested for drugs. I took that to be a finding that the judge thought that he properly was making inquiries with the dispatcher. Yes, that is correct, Your Honor. And that therefore the questions about the history didn't extend the time of the stop. And I just wondered if you could clarify whether you're arguing that the questions extended the time beyond what was permissible or whether you're just arguing that there's something about the topic of the questions that's impermissible even if it didn't extend the time. Actually, I'm arguing both, that the questions were impermissible and they added time. I mean, I think Rodriguez says that, I mean, it could be five minutes, an hour. The focus was on whether the officer veered from the mission of the traffic stop. And if the questions, the impermissible questions prolonged the traffic stop even by five seconds, it's impermissible. So how did these questions extend the time by five seconds if they were asked while the detective was waiting to hear back from dispatch on a proper inquiry to the dispatcher? And it's the proper inquiries were whether their identification is that? Are you disputing that he, yeah, I thought he had, you know, run the normal checks through the dispatcher about the occupants and whether there are any warrants and so forth, which I think Rodriguez says is permissible if I'm remembering right. So you're not disputing that he could check with the dispatcher on those things. And and so I'm wondering if if he asked these questions about the history while he was waiting to hear back from the dispatcher, then how did the questions prolong the stop? That's what I'm trying to get at. Oh, OK, I get your question. From what I recall from the citizen transcript that he had already asked the questions about the criminal history and then he phoned in to dispatch from what I recall. But but my memory could be broad. OK, well, I'm just looking at the district court's finding. The district court says during the time required to hear back from dispatch, counts learned from Mathis and Ashburn that they had been previously arrested. That that arguably reads as though he got the information while he was waiting to hear back. But we can check. Yeah, but tell him that if he asked the question before he requested the informational dispatch, it still would have prolonged the stop, would it not? That is correct, Your Honor. How so? Again, five seconds. If he asked the questions and extended the stop five seconds. I mean, he's adding time to the stop. Whatever the question is, it is unrelated to the. But I'm just asking as a matter of logic, how did it extend the stop if. If. Well, you're saying it added five seconds before he called the dispatcher, but. Is there a finding that. That was the. That was the sequence. My God, I'm going to repeat myself. Like I said, I'm not sure. But I just remember. I mean, from what I recall, like I said, my recollection. I heard what you said before about the transcript. But we have to go by the findings, I believe, unless they're challenged. And the judge says while waiting for dispatch to run the information. The detective asked the occupants if they had been previously arrested. Isn't that a finding that he asked while he was waiting on the dispatcher? That is correct, Your Honor, yes. Okay, well, thank you for your argument. Do you have anything further? No, Your Honor. All right, we took up all your time. We'll give you a minute or two for rebuttal after we hear from the government. Okay, thank you. Ms. Jagley, we'll hear from you. May I please support? My name is Amanda Jagley, and I represent the United States in this matter. Detective Jamie Counts had probable cause to arrest Mathis. Because he had observed the driver veer off the roadway with the damaged license plate. The driver's hands were trembling and shaking. Those facts don't relate to Mathis, do they? Your Honor, in a totality of the circumstances framework, yes, they do. And so these facts, in addition to the ones that he learned later prior to her arrest for possession of drug paraphernalia, those facts were that Mathis and another passenger had a history of drug arrests. Another passenger was on active probation supervision. Mathis had driven the vehicle with the other passenger to pick the driver up prior to the traffic stop. The other passenger was found with methamphetamine on his person, and a digital scale with methamphetamine residue on it was located in the vehicle that Mathis had just driven. And so the totality of these circumstances, given those facts, there was sufficient probable cause for him to believe that Mathis constructively possessed a digital scale and that it was drug paraphernalia. Counsel, I'll just cut right to the chase here. Our case law says that Mathis had to have knowledge that the scale was in the console. What articulable facts are there to show that Mathis had knowledge the scale was in the console? Well, Your Honor, I would point to this court's precedence in Serrano-Lopez and Parker and Jimenez. Knowledge can be inferred from her presence where the contraband was discovered combined with other evidence. And so the fact that she had driven the vehicle, the fact that the contraband was discovered in a console that was in the vehicle that she had just driven, it was accessible to her. There was no evidence to the contrary that it wasn't. The fact that she was in the car with the passenger who was later found with methamphetamine, I think all supports an inference of knowledge. And in Parker and Jimenez, this court has found that a defendant can exercise dominion and control. A defendant's exercise of dominion and control over a vehicle can indicate knowledge. And so I think under this court's precedent and the facts that are available in this case that were known to detective counts, I think knowledge could be inferred. So let's drill down on that a little bit. I think we've said very clearly that proximity and accessibility are not enough. You have to have knowledge. Now, you could infer knowledge from certain facts, but here Mathis was not driving the vehicle and she didn't own the vehicle. Those facts are correct. No, she was not driving at the time of the stop, but the officer did have information that she had driven it pretty soon in time to before the traffic stop occurred. So if I took my wife's vehicle yesterday, that shows that I have knowledge of what's in the console. Well, I think the distinction I would make on that would be the amount of time. I mean, a day is different than minutes or perhaps an hour before a stop. It shows that she drove the vehicle, but how does it show knowledge of what's in the console? Well, again, Your Honor, she exercised dominion and control over the vehicle and had access and proximity to it, plus the fact that the scale contained methamphetamine, which was the same substance that was found on the passenger. Do you have any case law that would support that interpretation of constructive possession? How does that score with U.S. v. Dooley or U.S. v. Ramos from our circuit? Well, I would say to that, Your Honor, those cases concern a sufficiency challenge and an instructional challenge. And sufficiency is based upon the reasonable doubt standard. What we're dealing with here is the probable cause standard. And under this court's precedent in United States v. Brooks, detective counts did not have to have trial-level proof on the side of the road when he arrested Ms. Mathis for possession of drug paraphernalia. And so the facts that we've already discussed that were available to him, I think it was reasonable for him to draw the inference that she knew that there was drug paraphernalia in the console and that she had access to it because she exercised dominion and control over the vehicle in which that contraband was found. And so... Does that dominion and control have to be at the same time of the probable cause determination or can it be at some prior time? I think it can be in proximity in time, close proximity. And I mean, it's undisputed that she had driven the car prior to the stop. So I hope I'm answering your question. And I'm sorry, I may have lost track a little bit. But I don't know of any, you know, specific... You're answering my question. I just am not aware of any precedent that would support that conclusion as to constructive possession from a prior operation of a vehicle. Again, Your Honor, I would just point to the case law. Well, actually, I should, I guess, drill down a little bit. There was one particular case, and I believe it may have been Serrano-Lopez, which is a case from this circuit. Serrano-Lopez was actually a passenger in a car and had been in that car since it left California and traveled nonstop to Nebraska. And this court held that this evidence was sufficient for a reasonable jury to infer that Serrano-Lopez had the ability to control the vehicle. And I don't recall any testimony at all, or I'm sorry, any facts within that opinion that suggested that Serrano-Lopez had even driven the car. I think the court looked to that person's presence, where the contraband was discovered, when combined with other evidence. And again, our position on this is that she had dominion and control of the vehicle prior to the stop. She had operated it with a passenger who had methamphetamine on his person, was discovered with that meth on his person, and the skills that she had exercised dominion and control over also had meth residue. And so for those reasons, that added to the probable cause determination made by detective counts. How long before the stop had she been driving the car, according to the other person in the car?  Your Honor, I don't think that there was a specific time frame that was identified. I know that he had a conversation with detective counts when he was outside of the vehicle, and... But wasn't the testimony that they had... Remind me, where were they going and where were they coming from? Was somebody bringing a ride home from work or something? Yes, Your Honor. So Mr. Humes, who was the driver and owner of the vehicle, had been picked up. What he told detective counts at the side of the road was that Humes had told him that Mathis... Told detective counts that Mathis had just driven his truck to pick him up from work. And I believe that's on page 11 of the transcript in the addendum. Humes then told detective counts that they were headed back to St. Francis County, which I believe is a neighboring county to where the stop occurred. And I think the evidence was that Ashburn had been in the vehicle with Mathis prior to picking up Mr. Humes from his work, which was Crisp Contractors. Okay, thank you. Counselor, could you help us out with the timing of when the question was asked of the vehicle's occupants about prior criminal arrest versus when the request was made to the dispatcher to do a background check? Your Honor, based upon my recollection of the record, detective counts testified that he asked dispatch to run their information, including their license plate, registration, insurance, identification, and arrest histories. And from my understanding of the record, while he was awaiting those results from dispatch, while he was next to the driver's side door, he inquired about their arrest histories. But this is all permissible under United States v. Cox. I mean, he was entitled to make those inquiries, and so there's no exclusion. Was he entitled to conduct a criminal investigation for a traffic stop? What I'm arguing is that he is entitled to inquire into the occupants of the vehicle's criminal histories, and that's clearly set out in United States v. Cox. And so I would distinguish asking about their criminal histories, which is a permissible inquiry, is different from conducting a criminal investigation. And here, those inquiries didn't extend the stop, based upon the record we have. What would be wrong with asking questions relating to a criminal investigation if there's no prolongation of the stop? Maybe Cox doesn't go that far, but I'm not aware of any case that says there's a restriction on what questions can be asked, as long as the people are not detained any longer than they would otherwise be. Well, and I would agree with that. What I would say is, there just isn't an extension of the stop here, by virtue of the inquiries he made. And by the time he, I mean, the stop was necessarily extended by Humes' consent to search it. And that's not impermissible either. And even if this court were to determine if the traffic stop was extended, at the time he asked for consent to search the vehicle, detective counts knew that the driver appeared off the roadway, the driver appeared nervous because his hands were shaking and trembling, that Mathis and the other passenger, Mr. Ashburn, had a history of drug arrest, and he also knew that Ashburn was on active supervision in the criminal justice system. And so, while his inquiries did not extend the stop, even if he needed reasonable suspicion, by that time he had it. And so, but under this court's precedent in Rivera, Humes' consent to search provided, there's no unconstitutional extension of the stop where consent to search is given. So, in sum, there was ample probable cause here to believe that Mathis unlawfully possessed drug paraphernalia, and therefore her arrest was lawful, and detective counts made permissible investigative inquiries under this court's precedent, and the stop was not unlawfully extended. And in conclusion, the United States asked this court to affirm the district court's decision denying Mathis' motion to suppress. If there's nothing further, I save the rest of my time. Okay, I don't see any further questions, so we'll cede your two minutes over to Ms. Talley for rebuttal. You may proceed. Just let the clock keep running, Madam Clerk, that'd be fine. Thank you. Going to the government's claim that Serena Lopez supports the inference that Ms. Mathis knew that the scale was in the center console, I believe in Serena Lopez, the officer said that he was male when he recognized to be Math, and also the court found it dispositive that it was a large quantity of drugs, and that went to show that someone's not going to trust these occupants without knowledge that they know those drugs were in that car. That's all I wanted to discuss when it came regarding knowledge of the scale being in the center console. And if the court doesn't have any other questions or comments, I will relinquish my freely given two minutes. Thank you. And ask that the court, again, reverse the district court's order to deny Ms. Mathis' motion to suppress and vacate her conviction. Thank you. All right. Thank you both for your arguments and for appearing with us here by videoconference for this oral argument this morning. The case is submitted, and the court will file a decision in due course. Thank you. Thank you. Very well. That concludes the session for this morning, and the court will be in recess until further call of the docket. Good day. Good day. Thank you. Thank you.